

**SIGNED this 10 day of September, 2010.**

_____
**JAMES P. SMITH
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 7 |
| | : | |
| JAMES DELMAR DUNN, III | : | |
| JACKIE BOYER DUNN, | : | |
| | : | |
| Debtors | : | Case No. 09-31182 JPS |
| | : | |
| ERNEST V. HARRIS, TRUSTEE, | : | |
| | : | |
| Plaintiff | : | |
| vs. | : | |
| | : | |
| PANDA K. NELSON, JEFFREY L. | : | |
| NELSON, SUMMIT ASSET GROUP, | : | |
| INC., and WATER OAK PROPERTIES, | : | |
| LLC, | : | |
| | : | |
| Defendants | : | Adversary Proceeding |
| | : | No. 09-3054 |

BEFORE

JAMES P. SMITH.
UNITED STATES BANKRUPTCY JUDGE

COUNSEL:

| | |
|---|---|
| Chapter 7 Trustee: | Ernest V. Harris |
| | Harris & Liken, L.L.P. |
| | Post Office Box 1586 |
| | Athens, Georgia 30603 |
| | |
| Defendants Panda Nelson and Jeffrey Nelson: | Christopher D. Phillips |
| | Lamberth, Cifelli, Stokes, Ellis & Nason, P.A. |
| | 3343 Peachtree Road, N.E. |
| | Suite 550 |
| | Atlanta, Georgia 30326-1022 |

## MEMORANDUM OPINION

This matter arises from the Chapter 7 trustee's complaint in which he asks the Court to determine the interests of Debtors' estates in certain proceeds from the pre-petition sale of real property. The proceeds are currently held in "escrow" pursuant to agreements signed by the parties who owned the property at the time of the sale. The case was tried on June 24, 2010.[1] This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052.

## BACKGROUND

Ernest V. Harris, Trustee, is the Chapter 7 trustee of Debtors' estates. At the trial, Debtor James Delmar Dunn, III ("Mr. Dunn") testified for Trustee. Frank A. Lightmas, Jr. ("Mr. Lightmas"), who was counsel for Defendants Panda K. Nelson and Jeffrey L. Nelson (the "Nelsons") in connection with their pre-petition transactions with Debtors, testified for the Nelsons. Except for the purpose of the escrows, the facts are not in dispute.

---

[1] Defendants Summit Asset Group, Inc. and Water Oak Properties, LLC did not file a response to Trustee's complaint. Accordingly, a default judgement was entered against those defendants on March 2, 2010.

The Nelsons and Summit Asset Group, Inc. ("Summit")[2] jointly owned real property at 3651 Mars Hills Road, Watkinsville, Georgia (the "Mars Hill Property"). Summit owned a 75% interest and the Nelsons each owned a 12 ½ percent interest in the property. Each of the Debtors owned a 25 percent interest in Summit, with the remaining 50 percent interest in Summit being owned by Hank Bailey and Mrs. Bailey.

In addition, Water Oak Properties, LLC ("Water Oak") (in which Mr. Bailey and Mr. Nelson had ownership interests)[3] owned a 75 percent interest and Mr. Dunn owned a 25 percent interest in a condominium in Hilton Head, South Carolina (the "Hilton Head Property").

The Nelsons and Mr. Bailey also jointly owned another condominium in Hilton Head, South Carolina, and a lake house in South Carolina (collectively the "Other Properties"). Debtors had no interest in the Other Properties.

In the fall of 2006, the Nelsons contacted Mr. Lightmas regarding concerns they had with the accounting of revenues from some of this real property. As time

---

[2] Documentation introduced at trial referred to Summit as a corporation, Summit Asset Group, Inc., and as a limited liability company, Summit Asset Group, LLC. Because the corporate entity is the defendant in this case, the Court will treat Summit as a corporate entity.

[3] The record does not reveal any evidence as to the percentage ownership interests of Mr. Bailey and Mr. Nelson in Water Oak, or whether Mrs. Nelson had any ownership interest. However, since Trustee is only seeking to determine the estates' interests in the sale proceeds, and not the interests of any other party, this lack of evidence has no bearing of the outcome of this case.

went by, Mr. Lightmas learned that the Nelsons had purchased insurance products from Mr. Bailey and Debtors. Upon investigation, he concluded that Mr. Bailey and Debtors had engaged in alleged fraud in the sale of these products to the Nelsons. Mr. Lightmas further concluded that the Nelsons had significant damages claims against Mr. Bailey and Debtors arising out of these insurance product sales.

In April 2007, Summit and the Nelsons sold the Mars Hills Property. Pursuant to an "ESCROW AGREEMENT" signed by Mr. Dunn (on behalf of Summit) and the Nelsons, proceeds from the sale totaling $43,317.65 were placed in escrow with Calloway Title and Escrow, LLC ("Calloway").[4]

Thereafter, in September 2007, Water Oak and Mr. Dunn sold the Hilton Head Property. Pursuant to an "ESCROW AGREEMENT" signed by Mr. Bailey and Mr. Nelson (on behalf of Water Oak), Mrs. Nelson and Mr. Dunn, proceeds from the sale totaling $71,763.44 were placed in escrow with Calloway.

In 2008, the Nelsons, represented by Mr. Lightmas, brought suit against Mr. Bailey, Debtors and various insurance companies in the Superior Court of Fulton County, Georgia (Civil Action File No. 2008CV152648) in which they sought to recover damages for alleged fraud, negligent misrepresentation, breach of fiduciary duty, negligence and breach of contract by Mr. Bailey and Debtors in connection with

---

[4] Although Calloway is the holder of the proceeds at issue, Trustee did not join Calloway as a party to this adversary proceeding on the belief that Calloway would voluntarily comply with any order of this Court.

the sale of the insurance products.

Paragraph 4 of each of the escrow agreements, which were substantially identical, provides:

> Upon written notification from the Parties that they have agreed as to the disbursement of the above Escrow Funds or upon receipt of a court order instructing Escrow Agent to disburse the above Escrow Funds, Escrow Agent shall deliver to the appropriate parties the appropriate amounts as disclosed by said written notification or said court order.

Except for this paragraph, the agreements are silent as to the terms, conditions or basis upon which the parties were to reach an agreement as to the disbursement of the funds and provide no other direction to the escrow agent regarding disbursement. Not surprisingly, Trustee and the Nelsons disagree as to the meaning and intent of paragraph 4 of the agreements, the conditions upon which the funds were to be disbursed and whether Debtors' interests in the funds are property of the estate.

Trustee contends that the agreements are not true "escrow" agreements because there was no meeting of the minds with respect to the intent of paragraph 4 of the agreements and because the escrow agreements do not specify the beneficiaries who are to receive the funds. Thus, he contends that Debtors' interests in these funds are property of the estate.

The Nelsons, on the other hand, contend that the sales proceeds were placed in escrow in order to provide a fund against which they could recover from Debtors their damages arising out of the insurance products sales. Accordingly, they contend

6

that the funds in escrow are not property of Debtors' estates.

## DISCUSSION

Trustee contends that the interests of Debtors' estates in the funds being held in escrow are property of the estate. Trustee, as plaintiff, has the burden of proof on his claim. Schaffer v. Weast, 546 U.S. 49, 56, 126 S.Ct. 528, 534, 163 L.Ed2d 387 (2005). The preponderance of evidence standard applies to this proceeding. Grogan v. Garner, 498 U.S. 279, 286, 111 S. Ct. 654, 112 L.E.2d 755 (1991).

In Dzikowski v. NASD Regulation, Inc. (In re Scanlon),[5] the Eleventh Circuit Court of Appeals held :

> A debtor's estate in bankruptcy consists of all legal and equitable interests of the debtor in property as of the commencement of the case. The extent and validity of the debtor's interest in property is a question of state law.

239 F.3d at 1197. (citations and internal quotation marks omitted). Applying Florida law, the court explained:

> [L]egal title to property placed in an escrow account remains with the grantor until the occurrence of the condition specified in the escrow agreement. Nonetheless, funds that are deposited into an escrow account by a debtor, for the benefit of others, cannot be characterized as property of the estate.

239 F.3d at 1197-98. (citations and internal quotation marks omitted). Florida and Georgia law are identical on the subject of title to funds that are placed in escrow.

---

[5] 239 F.3d 1195 (11th Cir. 2001).

7

Georgia Heritage Ass'n. LP v. Westfield Apartments, LLC (In re Westfield Apartments, LLC), 2010 WL 2179622, at *5, n.6 (Bankr. S.D. Ga., April 27, 2010).

Trustee and the Nelsons disagree as to the enforceability and interpretation of the escrow agreements. In Giddens Construction Co. v. Fickling & Walker Co.[6], the court held

> 'The cardinal rule of construction [of a contract] is to ascertain the intention of the parties,' O.C.G.A. § 13-2-3, and '[e]scrow agreements will be given a reasonable construction in order to carry out the manifest intentions of the parties,' 11 EGL, Escrows § 6.

373 S.E.2d at 794.  "The intention of the parties may differ among themselves.  In such case, the meaning placed on the contract by one party and known to be thus understood by the other party at the time shall be held as the true meaning." O.C.G.A. § 13-2-4.  However, where both sides to a contract have different intentions with respect to an essential term of the contract, no valid and binding contract is created. Tekin v. Whiddon, 233 Ga. App. 645, 504 S.E.2d 722, 725 (1998).

> 'A meeting of the minds is the first requirement of the law relative to contracts.' (Citation and punctuation omitted). Simmons v. McBride, 228 Ga. App. at 753, 492 S.E.2d. 738. See OCGA § 13-3-2.  '(I)f there was in fact an essential part of the contract upon which the minds of the parties had not met, or upon which there was not an agreement it must follow than a valid and binding contract was not made.' (Citations and punctuation omitted) . BellSouth Advertising, Inc. etc., Corp. v. McCollum, 209 Ga. App. 441, 445 (2) 433 S.E.2d 437 (1993).

---

[6] 188 Ga. App. 558, 373 S.E.2d 792 (1988), rev'd on other grounds, 258 Ga. 891, 376 S.E. 2d 655 (1989).

504 S.E.2d at 725.  See also, Camp v. Peetluk, 262 Ga. App. 345, 585 S.E.2d 704 (2003), cert. denied.

Trustee contends that the escrow agreements are not enforceable because the agreements are silent as to the beneficiaries of the escrows.  However, "[i]f only a part of a contract is reduced to writing... and it is manifest that the writing was not intended to speak the whole contract, then parol evidence is admissible".  O.C.G.A. § 13-2-2(1).  Thus, the identity of the beneficiaries could be proved by parol evidence.  However, unless the Court finds that the parties had a meeting of the minds with respect to the intent of paragraph 4 of the agreements, the disagreement regarding the beneficiaries of the escrows will be moot.

In explaining his understanding of the escrow agreements, Mr. Dunn testified that he and Mr. Bailey were represented by the law firm of Bird, Loechl, Brittain & McCants ("Bird & Loechl") in the sale of the Mars Hills Property and the Hilton Head Property.  Mr. Dunn testified that, in connection with the closing on the sale of the Mars Hills Property, he was contacted by an attorney at Bird & Loechl and advised that the Nelsons wanted the sale proceeds placed in escrow until a proper accounting of the parties' interests could be conducted to ensure that everyone received their proper amount of the proceeds.  Having no objection, Mr. Dunn agreed to the escrow.

With respect to the Hilton Head Property, Mr. Dunn testified that, when a

9

similar escrow for those sale proceeds was suggested, he initially objected because he was unaware of any dispute regarding the ownership of that property. However, Mr. Dunn testified that Bird & Loechl advised him that if he did not agree to the escrow, the buyers would sue him for causing the sale to fail. Accordingly, Mr. Dunn testified that he then relented to the proceeds being placed in escrow pending an accounting of the parties' interests.

Although there was no testimony to refute Mr. Dunn's version of the facts, the Nelsons argue that Mr. Dunn's testimony is not credible. They point to the fact that Debtors did not list their interests in the escrow funds on their schedules of assets in their bankruptcy case. The Nelsons argue that this suggests that Debtors did not believe that they had an interest in the funds. However, Mr. Dunn testified that he advised his bankruptcy attorney of the escrow funds and that the attorney included the value of the Mars Hills Property escrow in the value of Mr. Dunn's interest in Summit which he disclosed on the schedules. Mr. Dunn testified that the attorney erroneously included his interest in the Hilton Head Property escrow as part of his interest in Summit. Further, Mr. Dunn testified that he and Mrs. Dunn voluntarily disclosed information regarding the escrow funds to Trustee at the meeting of creditors.[7] The Court finds Mr. Dunn's explanation credible.

The Nelsons also challenge the credibility of Mr. Dunn's testimony because

---

[7] 11 U.S.C. § 341(a).

after the proceeds were placed in escrow, Debtors never attempted to recover the funds from the escrow agent. However, Mr. Dunn testified that until shortly before he and his wife filed bankruptcy, he had a high enough income that he did not need immediate access to his interest in the funds. When his economic condition deteriorated, the value of his interest in the funds relative to the amount of his debts[8] was not significant and would not have solved his financial problems. He also testified that once the Nelsons filed the insurance claims lawsuit he knew they would not voluntarily agree to release his interest in the funds and he could not afford to pay an attorney to litigate over the funds. The Court finds Mr. Dunn's explanation credible.

Accordingly, the Court finds that Trustee has established, by a preponderance of the evidence, that Mr. Dunn's sole reason for agreeing to the escrow was to hold the funds pending an accounting of the parties' ownership interests. Had this understanding been conveyed by Bird & Loechl to Mr. Lightmas, who was representing the Nelsons in connection with the property sales, the Court could find that the Nelsons were aware of Mr. Dunn's intent. Knowledge that their attorney, Mr. Lightmas, obtained in the matter in which he had been engaged would be the equivalent of knowledge of his clients. Roylston v. Bank of America, N.A., 290 Ga. App. 556, 660 S.E.2d 412, 417 (2008).

---

[8] In his schedules of assets and liabilities introduced at trial, Debtors reported secured claims in the amount of $394,500 and unsecured nonpriority claims totaling $245,941.41.

11

Further, had the Nelsons not objected to this intent, then the Court could hold that this was the intent of the parties with respect to paragraph 4. O.C.G.A. § 13-2-4. However, there is no evidence that Bird & Loechl conveyed Mr. Dunn's intent to Mr. Lightmas. Thus, there is no evidence that the parties had a meeting of the minds that the purpose of the escrow was to facilitate an accounting of the parties' interests.[9]

In explaining his understanding of the escrow agreements, Mr. Lightmas testified that he began talking with Bird & Loechl about the revenue accounting issues in early 2007. He testified that he also attempted to discuss the insurance claims with Bird & Loechl. However, they advised him that they did not know anything about those claims and could not talk to him about them.

Mr. Lightmas testified that when the Mars Hills Property was sold, he told the attorneys at Bird & Loechl that he wanted to escrow the proceeds as a fund from which the Nelsons could recover their claims arising from the insurance product purchases. He testified that Bird & Loechl agreed to this and sent him a proposed escrow agreement form. Mr. Lightmas testified that he made changes to the proposed form, the most important of which was to add the phrase in paragraph 4 that

---

[9] Even if the Court were to find that the parties had a meeting of the minds that the purpose of the escrow was to facilitate an accounting of the parties' interests, the outcome of this case would not change because Mr. Lightmas testified that the accounting of revenues dispute was with Mr. Bailey and not with Debtors. Thus, the Nelsons would have no claim against Debtors' interests in the funds arising out of the accounting dispute with Mr. Bailey.

12

the escrow agent was to disburse the funds "upon receipt of a court order instructing Escrow Agent to disburse the Escrow Funds". Mr. Lightmas further testified that when the Hilton Head property was sold, he again demanded that the sales proceeds be placed in escrow. He testified that Bird & Loechl had no objection and the same escrow agreement form was used.

Mr. Dunn testified that Bird & Loechl, which was representing him in the real estate matters, never advised him that the purpose of the escrow was to provide a source of collection for any recoveries by the Nelsons on their insurance claims. Mr. Dunn testified, without contradictaction, that he was not even aware that the Nelsons were asserting the insurance claims against him until the lawsuit was filed and served in June or July of 2008, almost one year after the property sales were closed. He further testified that he would have never agreed to an escrow for this purpose. Nevertheless, if Bird & Loechl was aware of the Nelsons' purpose, then that knowledge would be charged to their client, Mr. Dunn. Roylston v. Bank of America, N.A., supra. Thus, the Court must decide whether Mr. Lightmas conveyed this intent to Bird & Loechl.

Although Mr. Lightmas testified that he had expressed this intent to Bird & Loechl, the Court finds that this testimony is not credible because it is completely inconsistent with the documentary evidence introduced at trial. Although Mr. Lightmas testified that, from January of 2007 through September of 2007, he

13

had numerous conversations with Bird & Loechl regarding the insurance claims, there are no letters, e-mails or memoranda which mention these claims. Several letters, settlement memoranda and e-mails generated during this period of time were introduced into evidence. All discuss the accounting disputes the Nelsons were having with Mr. Bailey and several suggest the possibility of litigation to resolve those disputes. However, there is no mention of the insurance claims in any of these documents, nor is litigation regarding those claims ever mentioned. In fact, Mr. Lightmas acknowledged that Trustee had reviewed all of the e-mails and correspondence between Mr. Lightmas and Bird & Loechl that were generated during this time frame and there was no mention in any of them of the insurance claims.

Further, it was Mr. Lightmas who demanded that the escrow agreement forms contain a clause requiring the escrow agent to respond to an order of court regarding disbursement of the sale proceeds. However, Mr. Lightmas, who filed the insurance claims lawsuit on behalf of the Nelsons, did not request in that suit that the court order the escrow agent to disburse the funds in payment of those claims. Mr. Lightmas' testimony that he did not include such a claim because he intended to file a second lawsuit regarding the escrows is not credible. Rather, his failure to include a claim on the escrows in the lawsuit suggests that he did not believe that the sales proceeds were escrowed for that purpose.

In summary, there is a paper trail to support Mr. Lightmas' testimony that,

during the relevant period of time, he was discussing with Bird & Loechl the accounting disputes between the Nelsons and Mr. Bailey. However, there is no similar paper trail evidencing his discussions regarding the insurance claims. Further, his failure to seek a court order regarding the funds in the lawsuit asserting those claims belies his assertion that the funds were escrowed for that purpose. Accordingly, the Court does not find Mr. Lightmas' testimony credible and the Court finds that there was not a meeting of the minds that the purpose of the escrows was to provide a fund against which the Nelsons could recover on their insurance claims.

As explained by the court in Fulton Land Co. v. Armor Insulating Co.[10]:

> In order to create a valid and binding escrow, it is necessary that there be an actual contract between the parties in interest, a proper subject matter, and an absolute deposit of [the money] with a depositary acting for the parties, by which it passes beyond the control of the depositor to withdraw the deposit <u>on the performance or happening of the agreed conditions of the escrow period.</u>

15 S.E.2d at 849 (emphasis supplied). Where there is no meeting of the minds as to the terms of an escrow agreement, no valid and binding agreement is formed. Camp v. Peetluk, supra

The Court finds that Trustee has established by a preponderance of the evidence that the Nelsons and Mr. Dunn had different understandings of the purpose of the escrow agreement. Since there was no meeting of the minds with the respect to its purpose, no valid contract was formed. Accordingly, the Court finds that

---

[10] 192 Ga. 526, 15 S.E.2d 848 (1941).

Mr. Dunn's interest in the escrowed funds is property of the estate.

It is undisputed that Summit had a 75 percent ownership interest in the proceeds of $43,317.65 from the sale of the Mars Hills Property. It is undisputed that Mr. Dunn owned a 25 percent interest in Summit and, accordingly, owned a 25 percent interest in the proceeds. Thus, with respect to the funds from the sale of the Mars Hills Property, the Court finds that Mr. Dunn's interest is $8,122.06.

With respect to the Hilton Head Property, Mr. Dunn owned a 25 percent interest in the sales proceeds of $71, 763.44. Accordingly, his interest is $17,940.86.

With respect to Mrs. Dunn, there is no evidence that Bird & Locehl represented her interest in the sale of the Mars Hill Property. Further, there is no evidence of her intent with respect to the escrow agreement nor is there any evidence that the Nelsons' purpose for the escrow was ever conveyed to her. Accordingly, the Court finds that, with respect to Mrs. Dunn, there was no meeting of the minds regarding the purpose of the escrow, and accordingly, her interest in the escrow is property of the estate. It is undisputed that she had a 25 percent ownership interest in Summit. Accordingly, her interest in the sales proceeds from the Mars Hill Property is $8,122.06.

Trustee, as Chapter 7 trustee of Debtors' estates, succeeds to their interests in the funds being held by Calloway. 11 U.S.C. § 704.

An order consistent with this opinion will be entered.